k772CheC kjc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    UNITED STATES OF AMERICA,                New York, N.Y.
3
                 v.                          19 Cr. 833 (SHS)
4
    ANTHONY CHEEDIE, et al.,
5
                    Defendants.
6   ------------------------------x          Teleconference
7                                            July 7, 2020
                                             4:05 p.m.
8
9   Before:
10                     HON. SIDNEY H. STEIN,
11                                           District Judge
12
13                         APPEARANCES
14  AUDREY STRAUSS
          Acting United States Attorney for
15        the Southern District of New York
    BY:   KIERSTEN A. FLETCHER
16        BENET J. KEARNEY
          ROBERT B. SOBELMAN
17        Assistant United States Attorneys
18  LAW OFFICES OF FREDERICK L. SOSINSKY
          Attorney for Defendant Cheedie
19  BY:   FREDERICK L. SOSINSKY
20  FOY & SEPLOWITZ, LLC
          Attorney for Defendant Allen
21  BY:   JASON E. FOY
          ERIC SARRAGA
22
    RICHARD H. ROSENBERG
23        Attorney for Defendant Hanna
24  RILEY SAFER HOLMES & CANCILA, LLP
          Attorney for Defendant Brewster
25  BY:   RYAN P. POSCABLO

k772CheC kjc

1                                   APPEARANCES
                                    (continued)
2

3    PERRY GUHA, LLP
          Attorney for Defendant Handren
     BY:  SAMIDH J. GUHA
4         GEORGE M. BARCHINI

5    SULLIVAN & CROMWELL, LLP
          Attorney for Defendant Ciaccio
6    BY:  NICOLE W. FRIEDLANDER
          MAEGHAN O. MIKORSKI
7         TREVOR A. CHENOWETH

8    LAW OFFICE OF MICHAEL H. SPORN
          Attorney for Defendant Minetto
9    BY:  MICHAEL H. SPORN

10   LAW OFFICE OF ZACHARY MARGULIS-OHNUMA
          Attorney for Defendant Depaola
11   BY:  ZACHARY MARGULIS-OHNUMA
          VICTORIA MEDLEY
12

13   LAW OFFICES OF BRIAN NEARY
          Attorney for Defendant Larkin
     BY:  BRIAN J. NEARY
14

15   COHEN FRANKEL & RUGGIERO, LLP
          Attorney for Defendant Cirilo
     BY:  MARK I. COHEN
16        GILLIAN M. FEEHAN

17

18   ALSO PRESENT:

19   Emma M. Greenwood, Coordinating Discovery Attorney

20   Special Agent Marcus Murphy, Homeland Security Investigations

21   Detective Christopher Bastos, HSI Task Force

22

23

24

25

k772CheC kjc

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your names

3     for the court, and let Judge Stein know whether your client is

4     present as well.

5          THE COURT:  All right, ladies and gentlemen, before

6     you do that, because there are so many counsel, I will call the

7     names off, so we don't have a lot of people speaking over each

8     other.  And if that attorney is present, he or she should say

9     they are present and whether or not their client is present as

10    well and if the client is not present, whether or not that

11    client waives his or her appearance.

12          The purpose of today's conference is to hear the

13    status of discovery.  I have received a letter from

14    Ms. Greenwood that was filed under seal, but I do want to hear

15    her report, and also to see where we are going, that is, the

16    schedule for the rest of the proceedings.  I do want to have

17    this case move forward to the extent possible.  Obviously we

18    are in the midst of a pandemic and everybody is scattered, but

19    nonetheless the Southern District is functioning quite well and

20    we should move this case forward.

21          So let's start.  For the government, who do we have?

22          MS. FLETCHER:  Good afternoon, your Honor.  You have

23    Kiersten Fletcher, Benet Kearney, and Robert Sobelman from the

24    government, and we are joined by two case agents on this case,

25    Detective Christopher Bastos and Special Agent Marcus Murphy.

k772CheC kjc

1          THE COURT:  All right.  Good afternoon to all of you.

2          Ms. Greenwood, are you present?

3          MS. GREENWOOD:  Yes, your Honor.  Good afternoon.

4    Emma Greenwood, the coordinating discovery attorney.

5          THE COURT:  Good afternoon.  And I noticed you have a

6    nifty new logo on your correspondence, Ms. Greenwood.  It's

7    green, and it's green for wood, and there is like a block so it

8    looks like it's wood.  I thought it was very well done.

9          And for the defendants, do we have Mr. Sosinsky?

10         MR. SOSINSKY:  We do, your Honor.  Fred Sosinsky.  My

11   client, Anthony Cheedie, is on the call as well.  Good

12   afternoon, sir.

13         THE COURT:  Good afternoon.

14         And although this does not -- it is relevant just to

15   you, Mr. Sosinsky, we have a *Curcio* hearing and a bail issue on

16   July 15 at 3:30 hopefully in Courtroom 23A.  There is some

17   construction being done in that courtroom, as in most

18   courtrooms, to accommodate social distancing and so forth, and

19   it should be done by July 15.

20         This is for everybody.  I don't know whether you are

21   aware of it, but on the morning that you are going into court,

22   it is easiest if you log on to the Southern District website.

23   There is a short questionnaire for you to fill out, and after

24   you fill it out, you then will receive a QR code.  You go into

25   the courthouse, and in each entrance there will be readers.

k772CheC kjc

1    You put your QR code up to the reader, and it will read your QR

2    code.  It will take your temperature.  Perhaps it will give you

3    breakfast.  And presumably if you have done everything that you

4    have to and you don't have a temperature, you then will be

5    allowed to pass through.  You can fill out the questionnaire at

6    the courthouse itself, but it just makes it a lot easier and

7    will save time for everybody if they fill that questionnaire

8    out on their mobile device before coming to the courthouse.

9    The QR code is valid for one day, multiple entrances, but one

10   day.  That all, of course, is relevant at this time only to

11   Mr. Sosinsky and Mr. Cheedie.

12          I should also say that this is being recorded and that

13   it's a public line.  I was told by the computer that there are

14   30-some-odd people on, so I think we can assume that members of

15   the public of course are always invited on this line as well.

16   Please speak slowly, clearly, and pause after you speak so that

17   I can say whatever I want to say.

18          Mr. Foy, are you present, sir?

19          MR. FOY:  May it please the Court, Jason Foy for

20   Mr. Chad Allen.  Also present with me is associate counsel Eric

21   Sarraga.  Mr. Allen, with the permission of the court, will

22   waive his appearance.

23          THE COURT:  Yes, of course.

24          Mr. Rosenberg, are you present?

25          MR. ROSENBERG:  Yes, I am.  Good afternoon, your

k772CheC kjc

1   Honor.  My client, Shane Hanna, is on the line as well, your

2   Honor.

3           THE COURT:  All right.  Good.

4           Mr. Poscablo?

5           MR. POSCABLO:  Good afternoon, your Honor.  Ryan

6   Poscablo on behalf of Mr. Brewster.  And with the court's

7   permission and with my client's consent, we respectfully

8   request that your Honor waive his appearance today.

9           THE COURT:  Granted.

10          Ms. Perry.

11          MR. GUHA:  This is Samidh Guha on behalf of Kevin

12  Handren.  Ms. Perry is my partner at the firm.  My colleague

13  George Barchini is also on the call with me and Mr. Handren is

14  present on the line as well.

15          THE COURT:  All right.  Welcome, Mr. Guha.  Thank you.

16          MR. GUHA:  Good afternoon, your Honor.

17          MS. FRIEDLANDER:  Good afternoon --

18          THE COURT:  Ms. Friedlander.

19          MS. FRIEDLANDER:  -- your Honor.  Hi, your Honor.

20  Nicole Friedlander, Maeghan Mikorski, and Trevor Chenoweth for

21  Joseph Ciaccio.  Mr. Ciaccio is not on the phone today and he

22  waives his appearance.  He is in a long-term rehabilitation

23  facility and quite ill, as your Honor may recall, so --

24          THE COURT:  All right.  Thank you.

25          Mr. Sporn.

k772CheC kjc

1              MR. SPORN:  Hi.  I'm present, your Honor.  Thank you,

2     and good afternoon.  And Mr. Minetto, my client, is present on

3     the line as well.

4              THE COURT:  All right.  Welcome.

5              Mr. Margulis-Ohnuma.

6              MR. MARGULIS-OHNUMA:  Good afternoon, your Honor.  I

7     am present, accompanied by my associate attorney, Victoria

8     Medley, and my client Joseph Depaola is on the line.  Good

9     afternoon, Judge.

10             THE COURT:  Good afternoon.

11             Mr. Neary.

12             MR. NEARY:  Good afternoon, Judge.  This is Brian

13    Neary.  I am appearing today on behalf of Derek Larkin, and

14    Mr. Larkin has joined us on the telephone call.

15             THE COURT:  All right.  Good afternoon.

16             Mr. Cohen?

17             MR. COHEN:  Good afternoon, your Honor.  Mark Cohen,

18    and my associate Gillian Feehan is on the line, and Mattie

19    Cirilo, my client, is also on the line with us.

20             THE COURT:  All right.  Good afternoon to everybody.

21             Let's first hear a summary of the discovery so far

22    from the coordinating discovery attorney, Ms. Greenwood.  As I

23    said, I have read your letter, Ms. Greenwood, but let's put on

24    the record, it looks like actually things are moving forward

25    apace.  It also looks like there is a substantial amount of

k772CheC kjc

1    discovery in this matter, and I can't tell a bit from a byte,

2    but it sounds like lots of bits and bytes.  So why don't you

3    tell me what you want everybody to know.

4              MS. GREENWOOD:  Thank you, your Honor.  To date, my

5    office has received five global discovery productions, two of

6    which were produced since the last time we all met in your

7    Honor's courtroom.  The volume of the material received since

8    the last conference is about 60 gigabytes of data and, to put

9    that in context, we have received overall about 160 gigabytes

10   of data.  So we have received quite a bit since we saw your

11   Honor last.

12             Those productions produced since the last conference

13   have been made available to defense counsel.  My office worked

14   quite extensively with the government, in particular on the

15   latter production, with a number of space issues and things

16   like that that we were able to quickly resolve.

17             There remains one issue with a subset of files that

18   were produced in a format called PDF.  These files were also

19   produced in another file format called a load file format,

20   which is a --

21             THE COURT:  I think what you said in your letter was

22   some of the PDF format wasn't received, but people were working

23   on that and it should be no problem, is that correct?

24             MS. GREENWOOD:  Right.  We are awaiting from the

25   government a subset of PDF files which maybe the government

k772CheC kjc

1    will speak to as to status.  But as of today my office is not

2    in receipt of those problematic files.  However, the same -- my

3    understanding is the same files were produced in another

4    format, load file format, which is in my possession and is

5    accessible by defense counsel that have access to the online

6    database.

7            Besides that, just in terms of numbers, a little bit

8    of context.  We have about close to 800,000 files in this

9    discovery overall, which includes both the Cheedie discovery as

10   well as the discovery that was produced in the earlier Ketabchi

11   matter, and of that volume, almost 650,000 of those are

12   e-mails.  So we have been working with defense counsel to help

13   them review the material and, again, working closely with the

14   government to resolve any issues that remain.

15           THE COURT:  All right.  Well, thank you.  If I can

16   summarize and characterize, everything you have been given so

17   far in terms of global discovery has been processed and made

18   available in at least one acceptable format to all defense

19   counsel.  Is that fair?

20           MS. GREENWOOD:  That's fair, your Honor.  I should

21   mention just for the record that court-appointed counsel have

22   access to everything my office produces or, I should say,

23   distributes.  Retained counsel must pay a cost share for their

24   access to the online database, for example, so not everyone has

25   access to the database.

k772CheC kjc

1          THE COURT:  But if they share -- if they put in their

2     proportionate share, they do have access, and that's for

3     retained counsel.

4          MS. GREENWOOD:  That's correct, your Honor.

5          THE COURT:  All right.  That's fine.

6          Government, what would you like to say?  And who is

7     going to say it?  Please, everyone introduce themselves before

8     they speak so the court reporter knows who is speaking.

9          MS. FLETCHER:  Will do.  This is Kiersten Fletcher,

10    your Honor, and I suspect, unless I say something wrong, I will

11    be speaking on behalf of the government for the remainder of

12    the conference.

13          Everything that Ms. Greenwood just set forth is

14    correct.  With respect to the issues related to several of the

15    PDF documents that Ms. Greenwood flagged, my understanding is

16    that that issue relates to documents that were seized in hard

17    copy and that were sent to a vendor for purposes of scanning,

18    and we have not been able to resolve that issue in part because

19    the scanning has been suspended as a result of the pandemic.

20          The government has seized approximately 23 boxes of

21    documents and sent those documents to a vendor for scanning.

22    The vendor has ceased operating as a result of the pandemic and

23    has been unable to give us an estimate as to when they will be

24    operational again.  So we are in the process of trying to find

25    another vendor that is operating at this time.  Of those 23

k772CheC kjc

1   boxes, we were able to produce the eight that had already been

2   scanned, but there are 15 boxes of documents that have not been

3   scanned and as of yet not produced.

4          The vast majority of the discovery in this case has

5   been produced.  Your Honor, we expect to make a small

6   production later this week; and when I say "small," I mean in

7   the three- to five-gigabyte range.  That production will

8   include some bank records that have come in over the course of

9   the few months since the last conference as well as business

10  records that we have received related to a couple of the

11  different telemarketing companies that are at issue in this

12  case.  So that is the update with respect to the nonelectronic

13  devices discovery.

14         If the court would like, I can go on and address the

15  status of the imaging and preparing of reports for the

16  electronic devices that were seized.

17         THE COURT:  No.  Before you do that, let me probe a

18  little on the scanning.  Has this company essentially just gone

19  out of business or is it because it is in a state where the

20  phase, whatever phase the state is in does not allow that

21  company to be functioning?  In other words, to what extent is

22  it actually dead in the water?

23         MS. FLETCHER:  It's the latter, your Honor.  It's our

24  understanding that the employees of the vendor are not

25  permitted to go to work right now but that the business is

k772CheC kjc

1  still operational or will -- I think they hope be operational

2  when the pandemic ends.

3          THE COURT:  All right.  Well, you should be -- I'm a

4  little surprised to hear that.  I think it would depend on the

5  various phrases.  But you should take whatever steps needed to

6  get these things scanned, whether it is through this company or

7  another company.  All right?

8          MS. FLETCHER:  Yes.  And so, your Honor, we have tried

9  to do that with this company.  We were under the impression, I

10 think, initially that they would be able to return to work and

11 resume the scanning and we would not need to move the documents

12 to another vendor.  But the passage of time has made clear that

13 we cannot continue to wait, and so we are working to get the

14 boxes back to our office and transferred to another vendor who

15 can work on them.

16         THE COURT:  All right.  Please do that expeditiously.

17         Let's move on now to the numerous, I think

18 80-some-odd, or more, perhaps, electronic devices.

19         MS. FLETCHER:  Yes.  Quite a bit more, your Honor.

20 The government has produced, as we did with the prior case, a

21 list of the electronic devices that we have that were seized

22 and have noted on that spreadsheet, that list, what devices

23 have been imaged and the reports that were prepared for those

24 devices.  We have made available to date more than 100

25 electronic devices and, as we did with the prior case, informed

k772CheC kjc

1   counsel that to the extent that any of the counsel wish to have

2   a copy of the image of an electronic device or the report

3   associated with that image, that we will prepare and produce

4   those devices upon request.

5          There are still certain categories or certain buckets

6   of devices that remain outstanding.  There are approximately

7   ten devices taken from the search warrant conducted on the

8   Englewood, New Jersey, telemarketing floor.  Those devices have

9   not been imaged or certain devices have been imaged but a

10  report is not yet ready.  There are approximately six devices

11  outstanding from the search of the home of defendants Derek

12  Larkin and Mattie Cirilo.  And there are several devices that

13  were seized from the Florida office operated by Jason Sager.

14  None of those devices were used by any of the defendants in

15  this case.  But to the extent that they were used by

16  salespeople working for Jason Sager, who is a coconspirator of

17  many of the defendants charged in this case, the government is

18  looking through those devices.

19         There are two other categories of devices that we

20  wanted to raise with the court and address.

21         So the first category, as the court is aware, there

22  was a search warrant or a search conducted of a telemarketing

23  sales floor in Arizona after the defendants in this case were

24  charged.  That search yielded approximately 38 electronic

25  devices.  Those devices have not yet been imaged and have not,

1    as a result, been analyzed, and there are not yet reports

2    prepared for those devices.

3            There is also approximately 15 devices that were taken

4    from -- perhaps I should take a step back.  Your Honor, I

5    referenced earlier that there was a search warrant executed at

6    a sales floor in Englewood, New Jersey.  That is the sales

7    floor that was -- that operated Corporate Development Center

8    and Alliance Education, one of the companies at issue here.

9    When the agents conducted that search, it actually -- it turned

10   out that there were two separate businesses or two separate

11   offices operating within the same location.  The second office

12   is a -- was a medical device sales company, and 15 of the

13   electronic devices that were taken were actually taken from

14   that medical device company.  The government has not imaged

15   those devices and has not prepared reports for those devices.

16   At this stage the government does not intend to, because it

17   appears that the evidence that is likely contained on those

18   devices would not be evidence of the telemarketing scheme or

19   the business opportunity scheme as it is charged.  So while we

20   have made defense counsel aware that we have those devices, no

21   one has asked for them and we, at this point, given the large

22   volume of other devices that have yet to be imaged, do not

23   intend to image those devices.

24           And so our current understanding, your Honor, as might

25   not be a surprise, is that the Homeland Security investigation

k772CheC kjc

operates a lab that has been imaging and preparing the reports
for these devices.  As a result of the pandemic and as a result
of regulations that have been imposed by the agency, they are
operating far more slowly than they were pre-pandemic.  Our
current understanding is that the lab is able to process
approximately three devices per week for our case, and so our
current estimate is that, assuming than continues to be the
case going forward, that the government will be in a position
to have images and reports for the devices that remain
outstanding from the Englewood, New Jersey, search warrant and
from the search of the residence of Derek Larkin and Mattie
Cirilo in approximately six weeks and then will -- and the lab
will then be directed to prioritize the devices that were
seized in connection with the search warrant in Arizona earlier
this year and, after that, to continue to analyze the Jason
Sager office devices.

          Of course if any defense counsel has any reason to
think that certain devices from Arizona or from the Florida
sales floors contain evidence that they would like to see more
expeditiously, we are happy to rejigger our attempts at
priority, but that's how we intend to do it going forward.

          THE COURT:  All right.  And obviously if any defense
counsel wants to respond to that invitation from Ms. Fletcher,
they should do so individually.

          So what are we talking about here, Ms. Fletcher?  You

k772CheC kjc

1    are talking about six weeks to get the images and their reports

2    from Englewood, New Jersey, and Larkin and Cirilo, and then you

3    are going to do Arizona and then you are going to do Sager.  Do

4    we have a ballpark of when it is going to be done.?

5            MS. FLETCHER:  Your Honor, just doing the math, I

6    think if we -- if we collect the Arizona, the 30 devices

7    outstanding from Arizona and the 23 from Jason Sager's floor, I

8    think what we would be looking at is -- that's approximately 60

9    devices, at three devices per week, that's 20 weeks, so that's

10   five months.

11           I am hopeful that it won't take that long because I am

12   hopeful that the pace at which the lab is able to analyze this

13   data will increase as the city continues to open up.  But as

14   with defense counsel on this call, I think we are all unable to

15   predict exactly how that reopening plan is going to go.

16           I will say, your Honor, with respect to the Jason

17   Sager devices, you know that's approximately half of the

18   devices that are going to be outstanding once the six weeks

19   come up for the Englewood, New Jersey, and the Larkin devices.

20   The devices that we understand -- I'm sorry, the devices that

21   we understand were used by Jason Sager and by his office

22   manager as it were, those devices have been imaged and reports

23   are prepared.  So the devices that remain outstanding are those

24   that were used by salespeople who worked for Mr. Sager.  Our

25   current understanding of the way that these floors operated is

k772CheC kjc

1    that there was no interaction between the salespeople working

2    for Mr. Sager and the defendants that are charged in this case,

3    and so the likelihood that those devices contain material that

4    would even qualify as Rule 16 we think is pretty low.  But of

5    course we are going through the devices and imaging them and

6    conducting an analysis, both to assure ourselves of that and to

7    ensure that we are complying with our other disclosure

8    obligations.

9              So that is all to say, your Honor, I think it is going

10   to take some time to get through all of these devices, but once

11   the six weeks -- once the period beginning now and ending six

12   weeks from now concludes, I suspect every defendant in this

13   case will have at least access to any electronic device that he

14   or she potentially used or that those individuals working in

15   his or her office used.

16             And I would just note that -- no, that's all, your

17   Honor.

18             THE COURT:  All right.  I'm trying to think this

19   through.  Nobody is incarcerated in this proceeding, is that

20   correct?  We have the separate issue of Mr. Cheedie coming up

21   next week, but apart from Mr. Cheedie, there is no expectation

22   that anybody here will be or is incarcerated, is that correct?

23             MS. FLETCHER:  Putting aside the issue with respect to

24   Mr. Cheedie, yes, your Honor.

25             THE COURT:  That takes the legal pressure off me to go

k772CheC kjc

1        to trial since they are not incarcerated.

2                What is the position of the government on the ability

3        of defendants to make appropriate motions starting after the

4        six weeks, that is, I think I heard the representation from the

5        government that any device that was used by any defendant, and

6        certainly all of the Ketabchi discovery will have been produced

7        within six weeks, and the only thing that's outstanding at that

8        point is the Arizona and Sager devices, is that correct?

9                MS. FLETCHER:  That's correct, your Honor.  And so I

10       guess with one qualifier on my prior statement, the sales floor

11       that was searched earlier this year in Arizona was a sales

12       floor that the government understands was operated primarily by

13       defendant Chad Allen, and so until the search warrant affidavit

14       for that search and the fruits of that search are proposed,

15       Mr Allen would be unable to make a motion with respect to that

16       search.  But certainly Mr Allen and the remaining defendants

17       would be able to make any motions with respect to other devices

18       seized from them either at the time of the November 2019 arrest

19       or prior thereto.

20               THE COURT:  And you also did not deal with the

21       possibility, because it's the known unknown, that the pandemic

22       may ease and things will open up.

23               MS. FLETCHER:  That's correct, your Honor.  It is a

24       known unknown.  But certainly --

25               THE COURT:  All right.  Let me hear from anyone who

k772CheC kjc

1    wants to speak on the defense, because what I am thinking of

2    is, because everyone wants this to get moving, I think justice

3    would have it start to move, is that we set a time by which the

4    defense will make any motions, and it will start at six weeks.

5    In other words, the analysis -- your analysis of the discovery,

6    the clock will begin and you will have, say, a month to make

7    motions.  And if there is later discovery that would have

8    relevant motions, I'm not going to stop you from making those

9    motions, but it would be limited to the discovery subsequent to

10   what we will call six weeks.  It seems to me that's the way to

11   proceed.

12          Let me hear from anyone on the defense who wants to

13   speak to that.  And I will give adequate time, but I don't

14   think it is responsible to wait until all of these things are

15   imaged and produced for the defense to begin thinking about

16   motions.

17          Who would like to speak from the defense, if anyone?

18          MR. COHEN:  Judge, Mark Cohen, on behalf of

19   Mr. Cirilo, just for a question?

20          THE COURT:  Yes, sir.

21          MR. COHEN:  Judge, in large cases such as this in the

22   district in the past, it's been my experience that, especially

23   with the imaging that's going to occur on those devices that we

24   are waiting approximately six weeks for, might the government

25   consider notifying the defense as to whether or not it intends

k772CheC kjc

1    to use evidence seized from those devices?  For example, if the

2    six devices are of little importance to the government, why

3    make us make motions on those?  I'm curious to know if the

4    government might undertake that.

5              THE COURT:  Government, Ms. Fletcher.

6              MS. FLETCHER:  Your Honor, I think, given the volume

7    of electronic devices that we have, I'm not sure that's

8    possible, certainly not at this stage, and certainly not at a

9    stage, you know, prior to which the motion would likely be due

10   under your Honor's proposed schedule.  There are certain

11   devices we could articulate now, your Honor, that have evidence

12   that we would intend to use, but we certainly at this stage

13   couldn't be exhaustive and therefore couldn't necessarily moot

14   a motion.  It seems to the government, your Honor, that any

15   motions with respect to an electronic device, for example,

16   would go to the suppression of numerous devices seized in

17   connection with any particular search, and the basis for that

18   motion, if there was one, would be on the face of the search

19   warrant affidavit.  So it is not clear to me that what

20   Mr. Cohen is proposing actually is even possible or would

21   necessarily save him the level of work that I think he is

22   trying to save himself.

23             MR. COHEN:  Well, I am really trying to save the

24   crunch time after we get six devices coming up.  I'm aware of

25   what might be on the devices that are already imaged, but I am

k772CheC kjc

1    concerned about the unknown.  So that's the reason for the

2    question.

3           THE COURT:  Ms. Fletcher, I assume your investigation

4    is still ongoing, since you haven't imaged the devices, but I

5    would think in good faith there are certain devices that you

6    know are going to be of essentially no value to you or of

7    marginal value, and such a statement, while not binding on the

8    government, as long as it is made in good faith, would

9    certainly help guide the defense in how they should prioritize

10   thinking about these devices and their motions.

11          MS. FLETCHER:  Of course, your Honor.  And to the

12   extent the government, in the course of its review, determines

13   that certain devices are unlikely to be relied upon, we are

14   happy to engage in a good-faith discussion with defense counsel

15   on that basis.

16          THE COURT:  All right.  I am directing you to do so.

17   Exactly.

18          Anyone else from the defense?

19          MR. POSCABLO:  Your Honor, this is Ryan Poscablo on

20   behalf of Cameron Brewster.

21          You know, I agree with everything that Ms. Fletcher

22   said with regards to the scope of discovery that has been

23   produced that Ms. Greenwood's office has placed into CasePoint,

24   but we haven't spoken too much about devices that were seized

25   and the amount of data that is actually in those devices could

k772CheC kjc

1   far surpass what has already been loaded into CasePoint.  And I

2   think even if the government were able to have a good-faith

3   discussion with us at this point as to what they think -- where

4   the relevant devices are, given that some of them haven't even

5   been imaged, I doubt they are in a position to say that they

6   intend to use a particular cell phone or a particular computer

7   at this point, because they probably haven't had a chance to

8   review that yet.  If they haven't, it means that we haven't it.

9   I know that we have been working -- my office has been working

10  very hard to get through the materials that are in CasePoint,

11  and we will turn our attention next to over two dozen devices

12  that were seized that are somehow connected to and might even

13  be more to Mr. Brewster.  I guess what I am saying is I am

14  requesting a little more time than six weeks, because we are

15  going to need to get through that first to determine what is in

16  there and what would be the basis for a motion to suppress

17  anything that was seized in there.

18          THE COURT:  I'm not sure I understand, Mr. Poscablo.

19  You are saying you are hard at work on the CasePoint files that

20  have already been turned over, the global discovery that's

21  already come up, and therefore you are going to need time

22  beyond the simply six weeks that the government has projected

23  as the bulk of material coming in.  Is that what you are

24  saying?

25          MR. POSCABLO:  Slightly, Judge.  What I am saying is

k772CheC kjc

1    the government has made available to all the defense lawyers

2    the items that were seized pursuant to search warrants on the

3    date of the takedown.  I guess what I am saying is the amount

4    of data that is in those devices is -- may surpass the amount

5    of data that they have already produced.

6              THE COURT:  I understand that, but what do you draw

7    from that?

8              MR. POSCABLO:  I guess I am just asking for more time,

9    your Honor, because we haven't had a chance to touch on that

10   and review those materials yet, and before we can credibly

11   assess what types of motions, if any, we would file, we intend

12   to file, we would at least have to look at those devices, the

13   images of those devices.  So I'm just asking for more time,

14   Judge, than six weeks.

15             THE COURT:  More time than what?  I thought I was just

16   basically setting forth a way to proceed.  What more time than

17   what?

18             MR. POSCABLO:  I had -- maybe I misunderstood, your

19   Honor.  I understood what you are saying was that within six

20   weeks defense counsel were supposed to file motions.  If I

21   misunderstood that, I apologize.

22             THE COURT:  No, no, no.  I was saying I would set

23   something like a month from six weeks --

24             MR. POSCABLO:  Oh.

25             THE COURT:  -- waiting for the devices to come over

k772CheC kjc

1    and then presumably you are working on, and you have indicated

2    you are already in this case profile, and then a month after

3    the six-week deadline for motions to be made.  That's what I

4    was positing.

5              MR. POSCABLO:  Oh, I didn't understand.

6              MR. COHEN:  Judge, Mark Cohen, again.  If I might just

7    to ride on the coattails of Mr. Poscablo for a second, my

8    concern I think is sort of a hybrid.  One is that I think that

9    all of us, because we all spoke via Zoom -- or not all of us,

10   but most of us spoke via Zoom yesterday.  One concern that we

11   have not articulated, I guess, or that hasn't had sufficient

12   air time is the amount of time that we have with our clients

13   during the pandemic to date, some people -- not Ms. Cirilo, who

14   lives locally, but some people live far away, and our concern

15   collectively is having enough time to go through what has

16   already been produced.

17             And then I want to re-articulate my concern that if

18   your Honor is telling us that motions are due a month after

19   they expect to get Mr. Neary and I six devices for our two

20   clients, I just think that that's cutting it very close.  And

21   I'm fully aware of the fact that we all need justice to occur

22   at a good pace, but also not at the expense of us doing the

23   sort of job we need to do in such a paper-intense case as well,

24   your Honor.

25             (Indiscernible crosstalk)

k772CheC kjc

1          THE COURT:  Who was speaking?

2          MR. MARGULIS-OHNUMA:  Sorry.  I wasn't trying to cut

3    in.  It is Zach Margulis-Ohnuma.

4          THE COURT:  All right.  Cut in.

5          MR. MARGULIS-OHNUMA:  I think what we are missing here

6    is we need an interval after the discovery is complete, and we

7    will of course do it on a rolling basis, but if everything

8    really is in in six weeks, we need time -- it's very

9    voluminous.  We need time to review it and then we need about a

10   month for motions.  So I would propose another six weeks after

11   the government's discovery is complete, and maybe even another

12   conference to make sure that the discovery is complete.

13         THE COURT:  No.  I understand.  Now I'm going to

14   interrupt.

15         MR. MARGULIS-OHNUMA:  Just for the review in addition

16   to the motion drafting.

17         THE COURT:  I understand the defense would obviously

18   like more time rather than less on everything.  I am not -- and

19   I am trying to do something that makes sense and, again, it is

20   a little hard to get a sense of the volume here.  However, I do

21   know from the Ketabchi case that there is just enormous

22   sections of the electronic devices that have absolutely nothing

23   to do with the criminal proceedings.  There just is no point in

24   anybody looking at them.  Now, obviously, you have to make that

25   decision yourself.  These things fit into certain patterns, and

k772CheC kjc

1     I have no reason to doubt that's not true here, because these

2     things allegedly are intertwined product and sales floors

3     different sales floors, different people.  But I am led to

4     believe it is essentially the same conspiracy, if I'm not

5     mistaken.  So you have a heads up on that.

6             Secondly, I am not at all sympathetic to I think it

7     was Mr. Cohen saying that because of the pandemic it's hard to

8     find time with your clients.  Ladies and gentlemen, what I have

9     been dealing with is people who are incarcerated, where it is

10    really hard, and that there are no legal visits or at least

11    there weren't as of last week, and people are given, you know,

12    a very short amount of time to review electronic discovery in

13    their unit.  Those are issues.  I don't see it as an issue when

14    you have somebody who is not incarcerated, even if the people

15    are in different places.  Certainly compared to those who are

16    incarcerated, it is quite easy to be reviewing the discovery.

17            So this is what I intend to do:

18            Conditions are not ideal now certainly and I certainly

19    hope everybody is safe and healthy.  We are going to have six

20    weeks for the production of the electronic devices that were

21    set forth by the government.  I am going to provide, then, for

22    ten weeks after that, which is plenty -- no, no, no, I'm sorry,

23    two months would be eight weeks, eight weeks after that, which

24    is more time than I would like, but we are in a pandemic, for

25    motions to be made.  My guess is that they will fall into a

k772CheC kjc

1   pattern.  And to the extent people want to sign on to other

2   motions, that's best for everybody.  Two weeks after that for

3   the government to respond, and then two weeks for reply.  If it

4   does turn out that there is a massive amount of briefing, I

5   will give the government more time.  Something tells me that

6   everything will be concentrated.

7          Now, Ms. Fletcher, on the record, the definition of

8   what you believe will come in within six weeks because I don't

9   want to misstate it.

10          MS. FLETCHER:  Thank you, your Honor.

11          In addition to the modest production that I described

12  earlier that we will be making this week, the government

13  expects to make available within six weeks the images and

14  reports for the electronic devices that were used at the home

15  of Derek Larkin and Mattie Cirilo as well as the electronic

16  devices that remain outstanding from the Corporate Development

17  Center office in Englewood, New Jersey.

18          And for the sake of clarity in the record, the office

19  in Englewood, New Jersey, was split into two parts.  The

20  government intends to image and make available reports of the

21  devices seized from the business opportunity telemarketing

22  floor, but not from the telemarketing floor that was involved

23  in medical device sales.

24          THE COURT:  All right.  So Ms. Blakely, could you set

25  forth on the record the dates as I have set them?  We are going

k772CheC kjc

1    to have six weeks from now for the production of those devices

2    by the government and a resulting order will set it forth, if

3    we get a transcript, and then eight weeks for the motions,

4    defense motions, and then two weeks and two weeks.  I guess we

5    don't have to put the actual dates on the record, Ms. Blakely.

6    You and I will compute it after this conference and we will get

7    an order out.

8              THE DEPUTY CLERK:  Okay.

9              THE COURT:  All right?  Is there anything else?

10             And of course I am just assuming discussions are going

11   forward between the parties because normally a case like this,

12   with all of these defendants, not everybody is going to go to

13   trial.  Obviously I don't have any particular knowledge, but

14   that's -- I have experience.  And if people are going to drop

15   out, that makes it easier for everybody to move the case

16   forward.  I'm not advocating it, I am just saying keep that, as

17   part of what you are doing, keep the line of communications

18   open.

19             All right.  I will set another conference date when I

20   get these dates in my mind set on paper.  We will get a

21   specific order out as well, and if anyone needs me for

22   anything, you can always write a letter and I will bring you in

23   for a conference.

24             If there is anybody who needs anything else, he or she

25   should set that forth now or hold their peace for this

k772CheC kjc

1    conference.  Anyone?

2              (Indiscernible crosstalk)

3              MS. FLETCHER:  Your Honor just briefly from the

4    government, but I am happy to wait my turn.

5              (Indiscernible crosstalk)

6              THE COURT:  There were two voices.  Who else?

7              MS. MEDLEY:  This is Victoria Medley.  I'm the

8    associate for Zachary Margulis-Ohnuma for Joseph Depaola.

9              I wanted to make sure as far as the outstanding

10   scanning documents are concerned, when those do come in and we

11   go through them, if for whatever reason we then determine that

12   an earlier motion needs to be expanded because of new

13   information we find, I just want to make sure we will be able

14   to do that even if it is related to the motions that were

15   already produced.

16             THE COURT:  I'm not sure I understand that.  I

17   certainly don't want multiple motions with the same things.

18   You will have to restate that.

19             MS. MEDLEY:  Right.  So if we get some of the -- if

20   we -- for the boxes that are scanned and we get those

21   documents, if we find anything in them that reveals that

22   something we have already litigated in a prior motion, you

23   know, now has a further basis for exclusion or some other

24   motion, I just want to make sure that we will be able to do

25   that if new information arises.

k772CheC kjc

1           THE COURT:  No.  I understand what you are saying.

2     No, I'm not going to say that.  The idea is if a device is

3     given to you, it's scanned, the information is given to you,

4     you are going to make whatever motion you deem appropriate on

5     the basis of the information you have been given.  No, you

6     can't go back half a year later and make a motion over

7     something that has long since been produced.

8           All right.  Anything else?  Government, you were

9     saying?

10          MS. FLETCHER:  Yes, your Honor.

11          Your Honor, as your Honor indicated, the parties

12    are -- certain parties are in discussion with the government,

13    and so we are hopeful that we don't have a ten-defendant trial.

14    But we do understand, based on trials that have been scheduled

15    in other cases in this district, that there may be quite a

16    backlog of cases that need to be set for trial come spring of

17    next year, and so the government was hoping to request that

18    your Honor set a trial date at this conference even if it is to

19    secure our place in line at some point.  The government was

20    thinking in the second quarter of 2021.

21          THE COURT:  I am not going to do that now.  There is a

22    heavily negotiated protocol that is about to issue from the

23    court or will issue at some point.  It is under discussion now.

24    It has plenty of subparts so that everybody's eyes will be

25    crossed when they try to figure it out, and it deals with the

k772CheC kjc

1    priority of trial.  I don't think we have to get into that now.

2    I actually think that there is a possibility that there will be

3    no backlog, but let's take it as it comes.  I'm not going to

4    set a trial date now.  It doesn't matter.  Of course it

5    matters, but I don't think there is a necessity to set a trial

6    date now, and I do feel that we can get the precedence that's

7    appropriate for this court when it is ready for trial.

8              All right.  Well, thank you all.

9              A VOICE:  Your Honor?

10             THE COURT:  The government?  Yes.

11             MS. FLETCHER:  Yes, your Honor.

12             The government moves to exclude the Speedy Trial Act

13   time.  Your Honor, when your Honor was setting forth the

14   schedule, I understood the date to likely result in motions

15   being due on October 13, and so the government would move to

16   exclude Speedy Trial Act time between today's date and October

17   13 in the interests of justice to allow the government to

18   continue to produce discovery and the defense to contemplate

19   any motions, as well as to further any discussions with a

20   pretrial disposition.

21             THE COURT:  All right.  I will assume the only

22   objections to that are from whoever speaks now.  Is there any

23   defendant who has objection to the exclusion of time?

24             All right.  Hearing none, I hereby exclude time from

25   today until October 13, 2020.  It is pursuant to 18 United

k772CheC kjc

1    States Code 3161(h)(7)(A).  I do find the ends of justice

2    outweigh the interests of the public and the defendants in a

3    speedy trial.  The purpose is for this considerable discovery

4    to be made and for the defense to analyze it and to make

5    whatever motions are appropriate as well as if the parties

6    choose for them to attempt to consensually resolve this.  The

7    exclusion is from today until October 13, and let's set a

8    conference date -- a conference at that time, because I will

9    look at all the motions and we will see what's required.  I

10   will get a sense of what's involved.  We will do it October 13

11   at 2:30 p.m., next conference.

12              And, again, if you need me before then just let me

13   know.

14              All right, everybody.  Is there anything else?

15              MS. FLETCHER:  No, thank you, your Honor.

16              THE COURT:  Everyone stay safe and we will all get

17   through this pandemic.  Thank you, all.

18              COUNSEL:  Thank you, your Honor.

19              COUNSEL:  Thank you, Judge.

20                            oOo

21

22

23

24

25